William W. Watkins, now assigned to Edward J. Williams, and Edward J. Williams in his own right, v. Emily I. Moore, Administrator of the Estate of William Moore, Appellant.

*Contract—Consideration—Cause of action.*

In an action of assumpsit plaintiffs alleged that, having an option upon defendant's land, they did certain work in testing it for coal; that they afterwards, with others, took a deed for the land and gave a mortgage

to secure the purchase money; that subsequently defendant promised to pay them a certain sum in consideration of the loss which they had sustained in testing the land, but that this sum was not to be paid until defendant had collected the mortgage.    Defendant proved, and it was not contradicted, that another person had advanced all the money that had been expended in the testing operations, and that such person had subsequently bought plaintiffs' interests in the land, and had paid them a sum more than the amount which they claimed from defendant.    *Held*, that plaintiffs had no cause of action against defendant.

*Practice, C. P.—Statement—Pleading—Evidence.*

In an action of assumpsit it is not error to exclude evidence tending to establish a different cause of action from that set forth in the statement of claim.

*Practice—Trial—Reading statement to jury.*

It is error to refuse defendant's offer to read the statement of claim to the jury.

*Evidence—Mortgage—Bond.*

Where a party has a right to prove a mortgage he has also the right to prove the execution of a bond accompanying the mortgage.

Argued Feb. 22, 1899.    Appeal, No. 318, Jan. T., 1898, by defendant, from judgment of C. P. Lackawanna Co., Sept. T., 1896, No. 563, on verdict for plaintiff.    Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.    Reversed.

Assumpsit on an alleged parol contract.    Before EDWARDS, J.

The facts appear by the opinion of the Supreme Court.

When W. W. Watkins was on the stand the following offer was made:

Mr. Newcomb, of counsel for plaintiff: We offer to show by the witness on the stand that at the time in question Mr. Williams wanted a deed to be made; that Mr. Moore stated that what he wanted to do was to get this property sold so that he could get $25,000 out of it; that after Mr. Fellows would put in $5,000, he would take their mortgage on the land in question for the balance, and that they should then go on exploring the property, and that they would have all that they could get over this $20,000; that in pursuance of that they continued the explorations of the property at considerable expense of money and labor, and becoming somewhat discouraged, they made known to Moore that they were discouraged and that they desired to give up the property and let him have it back; that thereupon

Mr. Moore urged them to continue their efforts and explorations, and offered if they would do so to find a purchaser of the property, so that he could realize the cash for the mortgage; that they borrowed the sum of $3,000 in order to continue the work.    To be followed by other evidence showing that they did extend their explorations and expended considerable money and labor until the succeeding spring when the property was sold, so that Mr. Moore realized the amount of his mortgage in cash on or about the month of November, 1892.

Mr. Price, of counsel for defendant: Objected to, because (1) it is an attempt to contradict the written option and deed and to make a new parol contract affecting title to the land in the Moore tract, while afterward the plaintiff conveyed and made a profit from the land, which in fact is a contradiction of the written papers under which the parties took title and which title was sold and conveyed; (2) it is admitted that a written contract may be changed by a subsequent parol contract, but this cannot be done, where deeds convey land and the grantees afterward sell and convey the title obtained from their grantor at a profit to themselves; (3) it is not competent evidence; (4) the allegata and the probata differ, and the facts they now propose to prove are different from the facts set forth in the declaration.

The Court: We overrule the objections and admit the evidence.    An exception is noted for the defendant at whose request a bill is sealed. [1]

Mr. Newcomb: We offer to show by J. Lewis Jones that he met Mr. Moore in the office of Alderman Williams, upon the occasion of coming to see about some work he had done for the alderman, and that upon coming to the office, he happened to hear Mr. Williams asking Mr. Moore when he was going to pay them the $3,000 that he was owing them for work they had done, or words to that effect; that Mr. Moore answered substantially that he didn't intend to pay it; thereupon Mr. Williams asked Mr. Moore if he hadn't promised to pay it, pay them the $3,000, if they would go on and prove the property so that he could sell it and realize the $20,000 on the mortgage, and that Mr. Moore answered saying that he had so promised, he believed, but he hadn't put it in writing and that they could not collect it.    This for the purpose of corroborating the witnesses who have testified on that point.

Mr. Price: We object to this offer because (1) it is an attempt to do away with the regular title to this property; (2) the evidence is not competent; (3) it is an attempt by parol to set aside the writings between the parties; (4) the contracts were executed and the plaintiffs in this case had conveyed their title and received therefor a valuable consideration.

The Court: Overrule the objection. An exception is noted for the defendants, at whose request a bill is sealed. [2]

W. W. Watkins on the stand.

Mr. Price: Did you sign a bond in connection with that mortgage?

Mr. Newcomb: We object to the question as irrelevant and immaterial. Let them produce the paper. The contents of the bond may be material, but we ask for the paper.

Mr. Price: It will turn out that the mortgage is satisfied.

The Court: Sustain the objection. An exception is noted for the defendant at whose request a bill is sealed. [3]

Mr. Price: Isn't it true that Mr. Moore put everything in writing when he had anything to do with you, and signed it himself and had you sign it?

Mr. Newcomb: We object to the question as irrelevant, incompetent and immaterial and not cross-examination.

The Court: The objection is sustained. An exception is noted for the defendant, at whose request a bill is sealed. [4]

The court refused to permit defendant to read plaintiff's statement to the jury. [13]

Esther Watkins, witness, on the stand.

Mr. Newcomb: We offer to corroborate Mr. Watkins with regard to the statement made by Mr. Moore to the effect that he was asked to put their agreement in writing; that he said that his word was as good as any writing they could have, and that they would get their money as soon as he got the money on the mortgage, as soon as he got the money on the mortgage he would count out the money to them.

Mr. Price: We object to this as being irrelevant, incompetent and immaterial.

The Court: Overrule the objection. An exception is noted for the defendant at whose request a bill is sealed. [5]

The court charged in part as follows:

[The question for you to decide is, did William Moore promise the $3,000 under the circumstances testified to by Mr. Watkins, and the further inquiry will be whether this promise was supported by a sufficient consideration. Is the testimony produced on behalf of the plaintiff of such a reasonable character as to convince you of the existence of the promise I have referred to, and made under the circumstances testified to by W. W. Watkins.] [6]

[What is the claim of the defendant in this case to offset the claim made by the plaintiff? The claim is all throughout the case, that the character of the plaintiff's contention is somewhat extraordinary; that the position of the plaintiff is untenable and not of such a character as to produce conviction of the truth and correctness of his position. They say that such testimony as that and such circumstances as have been related by Watkins are unavailable because Watkins and Williams were the owners of the land themselves and could do what they pleased with it. They could keep boring or quit boring. They also claim that, so far as the evidence in this case shows, the plaintiff, and with him W. W. Watkins, at the time Watkins had an interest in this contract, that they had paid out no considerable sum of money. The defendant claims that at the same time no such contract existed. These circumstances are for you to consider. If he made this contract it would be binding upon the estate regardless of the amount of money Watkins and Williams had received from Fellows on account of their connection with this land. At the same time the defendant claims that there was no consideration.] [7]

[Then there are other circumstances which they claim throw some discredit upon the testimony of Watkins, the first of which was when the four of them had this property it was not in the power of Watkins and Williams to tell Moore that they would cease testing the land, because there were two other persons who were interested in the land. This you may consider as stated in connection with all the evidence in this case. It is not at all conclusive because it may happen that Watkins and Williams did do this without the knowledge of Brennan and without the knowledge of Fellows, and yet that Moore made the contract testified to in this case.] [8]

[Then you had the testimony that Fellows had heard no com-

plaint made as to the success of the boring operations on this land. The purpose of that is to throw some discredit on the testimony of Watkins that the boring was not successful, and the developments were not what they expected.] [9]

[As has been already stated, it is a claim against the estate of a person who is dead. His lips are sealed in death, and we have no way of getting his testimony. Of course that closes the lips of the party on the other side, as he is a person interested in this contract; so that Mr. Williams cannot be sworn and cannot give his testimony. And William Moore being dead we cannot get his testimony.] [10]

Defendant's points and the answers thereto were as follows:

1. Under all the evidence of the plaintiff in this suit the verdict must be for the defendant. *Answer:* This is denied. [11]

2. If the jury believe that John H. Fellows paid the costs of all boring and prospecting done upon the property sold by William Moore to Watkins and Williams and others, and that Watkins and Williams each received $2,000 as purchase money for the interest of each in the property, the verdict of the jury must be for the defendant. *Answer:* This is refused. [12]

Verdict and judgment for plaintiff for $4,012.50. Defendant appealed.

*Errors assigned* among others were (1–5, 13) rulings on evidence, quoting the bill of exceptions; (6–12) above instructions, quoting them.

*Samuel B. Price*, for appellant.—If there is a variance between the declaration and the evidence in stating the consideration of a contract, and an objection is made, it is fatal: 1 Chitty on Pleading, 298; Stump v. Hutchinson, 11 Pa. 533; 2 Greenleaf on Evidence, sec. 209; Good v. Mylin, 8 Pa. 51; Cunningham v. Shaw, 7 Pa. 401; Stephens v. Graham, 7 S. & R. 505.

Parol evidence is incompetent to add any covenant to a deed, to enlarge or contradict any covenant, or create a reservation: Brown on Parol Evidence, p. 335; Cabot v. Christie, 42 Vt. 121.

A promise to induce one to comply with an existing valid contract is without consideration: Johnson v. Sellers, 33 Alabama, 265; White v. Bluett, 23 L. J. (Ex.) 36.

It is not enough that the evidence offered shows a cause of action, it must establish the cause of the action laid in the declaration. The plaintiff does not recover on proof alone, he recovers secundum et probata: Clark v. Lindsay, 7 Pa. Superior Ct. 43; Kaightlinger v. W. U. Tel. Co., 20 Pa. C. C. R. 630.

All negotiations, conversations, oral promises and verbal agreements are forever merged, superseded and extinguished by the sealed instrument which is the final outcome and result of the bargaining of the parties: Wodock v. Robinson, 148 Pa. 503; Hunter v. McHose, 100 Pa. 38; Jackson v. Payne, 114 Pa. 67.

If the consideration proves to be a nullity the promise founded upon it is void: 1 Parsons on Contracts, 462; Scurfield v. Gowland, 6 East, 241; Chapman v. Brooklyn, 40 N. Y. 372; Burrough v. Skinner, 5 Burr. 2639; Flynn v. Allen, 57 Pa. 482; Cabot v. Haskins, 3 Pickering (Mass.), 83; Tyron v. Mooney, 9 Johns. (N. Y.) 358; Yeager v. Yeager, 8 Atl. Rep. 579; Bowman v. Tagg, 8 Atl. Rep. 384; R. R. v. Galbraith, 109 Pa. 32.

A party to a suit is conclusively bound in the progress thereof by the admissions which he expressly makes in the pleadings, or by stipulations, oral or written, which are formally entered into for the purpose of dispensing with proof: 1 Jones on Evidence, sec. 276; Boileau v. Rutlin, 2 Exch. 665; Robins v. Maidstone, 4 Q. B. 811; Best on Evidence, sec. 541; Taft v. Fiske, 140 Mass. 250.

Where any part of an entire consideration is unlawful all promises founded upon it are void: Filson v. Himes, 5 Pa. 452; Swan v. Scott, 11 S. & R. 155; Nester v. Brewing Co., 161 Pa. 483.

*Charles L. Hawley*, with him *Edward C. Newcomb*, for appellee.

OPINION BY MR. JUSTICE GREEN, July 19, 1899:

It must be conceded that the plaintiff's cause of action, as set forth in his statement, is of an exceedingly misty, vague and uncertain character, hard to understand and difficult to reconcile with the facts averred in the statement. In the first clause of the statement it is said that the plaintiff claims of the defendant $3,000, with interest from January 18, 1895, and that it appears fully in the clauses which follow. In the next clause

he says that in April, 1889, the defendant's intestate, William Moore, was the owner of a tract of supposed coal land in Lackawanna county, containing 129 acres, seventy-two perches, and that he made a written agreement or option with William W. Watkins and Edward J. Williams (plaintiff) to sell them the said land at some time thereafter, and after they had been given an opportunity to test the land for coal, but that he cannot describe the option because of the loss of the paper. He then adds that the option was verbally extended until May, 1890, and that before that time, and during the life of the option, said Watkins and Williams had expended $6,000 in testing the land for coal, of which $5,000 was a total loss, and he further says they continued such expenditures upon the promise of Moore to reimburse them afterwards, when the amount should be ascertained, and that it was afterwards ascertained to be $3,000.

The next clause of the statement alleges that, in May, 1890, for the purpose of effecting a sale of the property, Moore made a deed for it to John H. Fellows, Edward H. Williams, William W. Watkins and H. J. Brennan, taking at the same time a mortgage " for $20,000 of the $25,000 purchase money set forth in said deed, the collection of the $20,000 being restricted to said premises." The statement does not aver that the $5,000 was to be paid or what was to be done about it, and it is manifestly defective in this respect. The next clause of the statement avers that the interests of the other grantees subsequently became vested in Fellows, who in January, 1892, sold the property to several persons named. The next clause avers that the loss sustained by Watkins and Williams in these transactions was some $5,000, and the testing for coal which was done by them was one of the causes of the sale by Moore for many thousands of dollars more than he would have received had it not been for the expenditures ; and that another cause was a fraud practised by Moore by inducing an employee to introduce ten feet of coal core from another tract of land into the core barrel of the drilling machine. What relevancy this fact had, or could have, to the plaintiff's cause of action, cannot be known or imagined from anything contained in the statement. The next clause of the statement avers that in the spring of the year 1892, after the final deed was made to the parties to whom

Fellows sold the land, Moore promised Watkins and Williams to pay them $3,000 in consideration of the losses they had sustained in testing for coal, as soon as he should receive the $20,000 secured by the mortgage for that amount, which mortgage had been given by Fellows, Watkins, Williams and Brennan. The last clause of the statement avers that on or before January 18, 1895, Moore was paid the full amount of the mortgage, and that the interest of Watkins having been assigned to Williams, Moore neglected and refused to pay the plaintiff, Williams, the said $3,000, and therefore the suit is brought. Stripped of its verbiage and irrelevant matter, the plaintiff's claim is that the defendant, Moore, owed and promised to pay $3,000 in consideration of the loss which Watkins and Williams had sustained in 1889, and before May, 1890, in testing his, Moore's, land for coal, but that it was not to be paid until Moore had collected the $20,000 mortgage in which both Watkins and Williams were debtors.

It is extremely difficult to understand how a valid cause of action could exist in the circumstances set forth in the statement. For after the loss, which was the basis of the promise, had occurred, Watkins and Williams accepted a deed for the land in consideration that they would pay to Moore $25,000 for the land. In all common understanding, and in legal significance also, such a claim would necessarily be merged in the deed. And how there could be a valid consideration moving to Moore to pay $3,000 out of money which another party was to pay and did pay to Moore, in discharge of a mortgage given by Watkins and Williams to Moore, is, to say the least, quite difficult to understand. It is not claimed that this was an absolute promise to pay Williams and Watkins, but only a conditional promise to pay it, if and when he received that particular mortgage money. It was not the previous loss sustained in 1889, and before 1890, that was the consideration, but the subsequent receipt by Moore of the mortgage money in 1895 that constituted the basis, and therefore the consideration, of Moore's promise to pay the $3,000 claimed by the plaintiff. But that money belonged in its entirety to Moore, and Watkins and Williams jointly with the others owed it. While it might be that it could not be collected from them personally it was their debt, and could be collected out of their land. The original

loss having been eliminated as a moving part of the actual consideration of the alleged new promise, and having been merged in the deed which was accepted by Watkins and Williams, it is very hard to recognize it as a live consideration for the new subsequent promise. But it is much more difficult to recognize it as possessing any potential validity when the very promise itself, set up in the statement, places the subsequent receipt of the $20,000 mortgage money as the basis of liability for the promise. It does not seem to be anything more than a promise by Moore to Watkins and Williams that at some subsequent time when he received from another party a certain sum of $20,000, to every dollar of which he was lawfully entitled, he would make a present to them of $3,000, part of that money. For it must be carefully borne in mind that the statement does not allege any original promise or agreement by Moore to pay Watkins and Williams for losses which they might sustain in testing the land for coal. It is only alleged that there was an option to buy the land after they had made tests, and that after the loss had been sustained they continued to make expenditures upon a promise by Moore to reimburse them for their loss when the amount of the loss should be subsequently ascertained. But there is no allegation that they made any further loss after the promise was given, and they do aver then and later, that the amount of the alleged loss of $5,000 was subsequently ascertained to be and was fixed at $3,000. The general situation of the plaintiff's claim, therefore, as set forth in his statement is, that Moore, being under no obligation to pay Watkins and Williams for losses in testing, which they had sustained, promised that he would pay them $3,000 if and when he received a certain amount of $20,000, the whole of which belonged to him and was secured by a mortgage for that amount, executed by them with others. Having said thus much in regard to the general character of the plaintiff's claim as set forth in his statement, we are prepared to consider the question raised by the twelfth assignment of error. On the trial, John H. Fellows testified that he had advanced all the money that was expended in the testing operations, and that the amount he furnished was over $7,000, and that he bought out the interests of Watkins, Williams and Brennan, and that he paid Watkins and Williams $2,000 each.

He also testified that he paid the $5,000 of the purchase money in the deed from Moore to himself and the others, and that the $20,000 mortgage money was paid by his vendees. The deed from Watkins and Williams to Fellows for $4,000 for their interests in the land, dated January 16, 1892, was also given in evidence. We do not discover any contradiction of this testimony on the record. This being the condition of the evidence, the defendant presented her second point to the court, to wit: "If the jury believe that John H. Fellows paid the costs of all the boring and prospecting done upon the property sold by William Moore to Watkins and Williams and others, and that Watkins and Williams each received $2,000 as purchase money for the interest of each in the property, the verdict of the jury must be for the defendant." This point was refused by the court below, and this refusal is complained of in the twelfth assignment of error. In this answer we think there was grave error. The whole foundation of the plaintiff's claim to have the $5,000 paid by Moore is the fact that Watkins and Williams sustained a loss of $5,000 by their boring and testing operations. Without that there is not the least ground to sustain their claim. If that fact did not exist they certainly had no right in law or morals to recover the money claimed. If then it was true that they never furnished the money expended for testing purposes, but that Fellows furnished it all, they sustained no loss, and there was no kind of consideration for the alleged promise of Moore. The point should have been affirmed, and the force of this conclusion is much increased by the other fact stated in the point, that Fellows had in addition paid $2,000 to each of them for their interests respectively in the land. If that were so, they not only did not lose anything, but actually made a profit by their connection with the transaction. We therefore sustain the twelfth assignment of error.

The offer of testimony embraced in the first assignment of error was an offer to prove a cause of action different from that set out in the statement, to wit: that Moore agreed to give Watkins and Williams all the money they could get on a sale of the property over $20,000 after Fellows had paid $5,000 to him, Moore, as part of the purchase money of the land. There is not the least mention of such a cause of action in the statement, and it was therefore error to admit the offer.

The offer covered by the second assignment, was in the line of the plaintiff's claim, and the testimony was therefore proper to be heard by the jury. 'The second assignment is not sustained.

The third assignment is sustained because the execution of a bond along with the mortgage was a part of the transaction, and as such it was competent to prove that fact. The fourth assignment is not sustained because the rejected question was immaterial.

The fifth assignment is not sustained because the proof offered is in accord with the plaintiff's claim, and was therefore entitled to be heard.

We can hardly say there was error in the comments of' the court covered by the sixth, seventh and eighth assignments. They relate rather to the credibility of the testimony than to the character of the claim, and as there was testimony in the cause of the kind referred to, it was not error to speak of it and to call the attention of the jury to its peculiar character. In the comments recited in the seventh assignment the court did say that the contract would be binding on the estate regardless of the amount of money Watkins and Williams had received from Fellows on account of their connection with this land. In one sense this might be true if it was a mere ordinary sale by Watkins and Williams to Fellows. But if Fellows furnished the money that was expended by Watkins and Williams in boring and testing the land, and therefore they sustained no loss in prosecuting that work, then it would not be true. As the error is not clear we will not reverse for this language. Nor are we disposed to reverse on the eighth assignment. It might be that Watkins and Williams had a contract themselves with Moore to be reimbursed the cost of testing, and if this was prior to the actual testing such a contract could perhaps be sustained, but if it was not prior to the testing, but subsequent thereto, and Watkins and Williams subsequently, and before the time of the alleged promise, had taken a deed from Moore for the land, we are quite clear it would be a void promise. That distinction is neither expressed nor implied in the comments of the court, and as there is no necessary error in the language used we do not sustain the assignment. The ninth assignment is not sustained because the matter complained of is not mate-

rial. The tenth assignment is not sustained. What the court said as to the incompetency of Williams was correct. It is not entirely clear that the cause should have been withdrawn from the jury with a binding instruction for the defendant, and we therefore cannot sustain the eleventh assignment.

We think it was error to refuse the defendant's offer to read the declaration, or statement, to the jury. Without it they could not know whether the testimony sustained the plaintiff's claim. The thirteenth assignment is sustained. The fourteenth assignment is not sustained.

The judgment is reversed and a new venire awarded.